Good morning, Your Honor. May it please the Court, my name is Patrick Manshardt. I'm both Counsel Pro Per and the appellate in the current action. I think the District Court made an error in determining that the application of the Federal Advisory Committee Act to this case, that is, the President's Federal Judicial Qualifications Commission, was incorrect in that the issue does not present a non-justiciable political question. I think the first thing is, I do concede that there is a textual commitment of the appointment of federal judges to the President in the Constitution. But I don't think that's the end of the inquiry. I know that that's what the Respondent's position is, that once that happens, that's the end of the inquiry. But I think there are a number of cases that suggest the opportunity. I know I didn't provide a letter like the Senate Counsel did as to the application or the meaning of Cheney v. District Court of D.C. But I do think that the Cheney case does suggest, at least at a minimum, that there's a private right of action available in a FACA case. That is, the lower court held that it dismissed the claim against the individual defendants but allowed the case against the government defendants to go forward. But we have to remember that these were what were basically called de facto members of that committee, that is, people who just happened to show up. And the argument was, well, they're not government employees, they just show up, but they're de facto members. You're not arguing that the Supreme Court decision in, quote, the Cheney case, specifically says that there's a private right of action under FACA? It doesn't specifically say that as far as I can tell. But I think it implicitly says it. And that is, I mean, it didn't discuss the issue one way or the other. But I brought the issue up because this is what's on my mind. And perhaps you can address it after Alexander versus Sandoval. Aren't we lower courts required to look to the statute at issue and find out if there is an explicit determination by Congress that they're in provision for a private right of action? I don't think so. I think the situation in Sandoval was quite clear because that was part of the Civil Rights Act of 1964, where there was no private right of action in Title VI, which was basically set for the government to enforce. But in the same act, such as in Title VII, the court did put a private right of action for employees who had been discriminated against. Here, I don't think... Even though the text of the statute didn't provide it? Of FACA? Yeah. No, I understand the text of the statute doesn't provide one. But I do think that the Supreme... You talked about the Civil Rights Act and that in one part the court said there wasn't, but in another part that there was. And my question is, in that part, the part you referred to, did the court infer a private right of action or was it in the statute? In the Civil Rights Act, there was no private right of action in Title VI and the court held that that was the case. As far as Title VII goes, there is an express right of private action in Title VII. They're both parts of the same act. So the point being is, you can see if there's no private right of action in Title VI, but one in Title VII, Congress most likely, therefore, intended to make sure that there was a private right of action in Title VII and expressly failed to put one in Title VI when it clearly had... Well, it was clearly at least on their minds. In this case... Can you cite to a post-Sandoval case where the plaintiff sought a private right of action under an act of Congress where the text didn't provide for that, but the court permitted it? I think Cheney's that case. And Cheney's that case because Cheney, the lower court, went ahead and held that there was no private right of action against the private defendants, the individual defendants, the, I guess, de facto members of the, quote, advisory committee, unquote. But then went on to hold that there was a private right of action available against the governmental defendants. Now, the Supreme Court didn't disturb that finding. So I think that... Was anybody challenged there at all? I'm sorry? Anybody challenged that at all in the, or was it just assumed by parties in the Cheney case? It appeared to be assumed. It appeared to be assumed. But again, I think it's... I mean, for example, the first place we start is public citizen. Public citizen clearly assumes, without addressing the question, but assumes that there's a private right of action under FACA. We now come forward to Cheney, which also seems to implicitly assume, at least as far as the governmental defendants go, that there's a private right of action in FACA. And I think it's interesting that there seems to be a continuum of situations where FACA has been held to apply or not to apply, which is another one of the respondents' arguments. That is, they say that in Cheney, you had a situation where you had de facto members. So you had all government employees, but they said FACA, which normally would be an exception in FACA. But then they said, well, but you have these people who show up all the time, and it's as if they were members. The court takes that seriously. The court takes that one seriously and says, okay, we're going to go do discovery to find out if there is an advisory committee done. Then there's the Oregon case. I don't remember. Well, yeah, I do remember the name. It's Aluminum Company of America versus National Marine Fisheries, which is where you had an amalgam of parties. You had state governmental entities, federal governmental entities, private individuals, all kind of in this hodgepodge. And the court treated that issue, at least seriously, with respect to whether it's an advisory committee. Then you had public citizen, which the Supreme Court held it was a close question. But because the ABA committee had not been established by the president, which it hadn't, it existed previous to him taking office, the court said, well, it wasn't not only not utilized, even though it didn't. I guess you can almost lampoon the Supreme Court saying that utilize is a woolly verb. But even if it wasn't utilized, it clearly wasn't established by the president. This case is a closer one. Public citizen was before or after Sandoval? I'm sorry? Was public citizen before or after Sandoval? Well before. Well before. But again, I think the Cheney case cites public citizen with approval. It was Justice Kennedy who wrote the opinion in the Cheney case, who wrote a concurring opinion in a public citizen, suggesting that the Federal Advisory Committee Act might be unconstitutional in at least that application and maybe in others as well. But here, this case is a much easier one for determining whether or not there's an advisory committee. That is, the question is whether it's utilized or established by the president. Now, the respondents don't come forward in their brief and come on right out and say that the president doesn't utilize the committee. They pretend to not know what the word means as far as I can read. But this isn't a case where it was merely utilized but also established. Now they come forward and they say, no, no, no, it's not established by the president. Well, I think that's a really extremely disingenuous argument because they say not established by the president. On the other hand, you're saying that it implicates separation of powers and the president's appointment power. I mean, which is it? You can't have it both ways. If it's just, I mean, I could have my own debating committee. I could invite 10 friends over and invite people who might want to be judges to come over and sit around and talk to me and see if afterwards I like them. I'll write a letter to the president saying, these are good people. You might want to look at them. What would that be worth? Here, and I think the district court probably erred, and this is something that should probably go back down on remand for further discovery. And that is to what extent the president utilizes or established the advisory committee. And since we allege that it is an advisory committee, I think the court's required to take that allegation as true. But to the extent that they dispute that, this is something that should go down on, like in the Cheney case, go down and have a more developed record. For example, I think that after nominees who make it through the vetting process of the FJQC get nominated to the president and the president appoints them, I think I know what number that is, and I think it's 100%. On the other hand, I think I know what the number of people who did not go through the FJQC advisory committee process, and I think I know what percentage of those people got appointed to the office, and that would be 0%. But I think here that if the court is going to accept respondent's contention that it's not an advisory committee, I think the court should send the case down for discovery as to that issue, because we hadn't had any discovery in the lower court. This was a motion to dismiss. I think, again, going back to the issue of the textual commitment, we can see that there's textual commitment to the president here, but I don't think that's the end of the inquiry. There are a number of cases that say, OK, yes, there's a textual commitment, but that's not the last word. The question is whether the textual commitment is such that it impermissibly burdens the president's job, the president doing his job. And I think the court in Academy of American Physicians Association of American Physicians and Surgeons, the court said, you know what, that whenever you have an advisory committee and you're talking about administrative agency action, you're almost always going to, per se, have some sort of conflict with a presidential prerogative. Could the president pick up the phone and call Mr. Parski and ask him his thoughts on who ought to fill a vacancy in the Central District of California? Can the president do that? Absolutely. Absolutely. Without implicating FACA? Absolutely. Could he call Senator Feinstein? Absolutely. Senator Boxner? Certainly. Could he call the three of them in one room sitting together on a conference phone? Certainly. Could he throw in Joe Kochet and whomever? I think there does become a point where, I mean, I think if the president is in the meeting, then to the extent that the president's directly involved, it's not an advisory committee. He wants to save some time. He understands the concept of senatorial courtesy. Senator Boxner, Senator Feinstein may not have the time, but they've got trusted advisors. Could he put four or five of them in a conference room in downtown Los Angeles and call that room and ask them their views? Well, I think when he does that, he creates an advisory committee. And he can do that, but then he has to also do the other things that the Federal Advisory Committee act requires. By adding more than two people to the receiving end of the conference call, he's implicated FACA? Well, I think it's similar to the non-delegation doctrine, say, with example to Congress and administrative agencies. What is he delegating? What is he delegating? He calls them up and says, give me your thoughts on who would be good people to fill a vacancy on the central district bench. I think to the extent he does, to the extent he creates a screening committee, and again, I think there's probably a continuum. At one point, you can call senators Boxner and Feinstein into the White House. On the other hand, you have setting up a screening committee with a structure, which vets nominees. At one point, it's clearly not implicating FACA. On the other end, it does. Could the president go to a fundraiser at the Staples Center and at the end of the speech to his supporters, say, oh, by the way, I've got some federal judges I need to recommend to nominate to the Senate, and if any of you have any good thoughts about that, call Parsky and he'll pass it on to me. Could he do that? I think he probably could. There's 5,000 people in the room. They paid $2,000 apiece to be there. Is there any implication of FACA? It doesn't appear that there's the form of an advisory committee in that hypothetical. That's different than this. Well, it's closer than calling senators Feinstein and Boxner into his office, but it's still different. It's still different. We've got you down to about five minutes. Did you want to save any time? Yeah, I was actually going to bring that up. Yeah, I will go ahead and rest for the moment, unless there are any other questions. Don't see any. Thank you for your time. Thank you. Counsel? May it please the Court. My name is Grant Vinnick. I represent United States Senators Dianne Feinstein and Barbara Boxer. Could there be any division of argument here? Yes, Your Honor. Joe Clappidge from Unger Tolls will address the many reasons why the complaint fails on the merits, and I will address the three threshold grounds for affirming the dismissal below. Even split? I'm sorry, Your Honor? Even split? Even split. In minutes apiece? Yes, Your Honor. Okay. I will address the political question doctrine, legislative immunity, and Article III standing. The district court held the action unjusticiable because the issue presented in this case, the selection of Article III judges, is committed by the Constitution to the political branches. The court correctly reasoned that the Constitution did not contemplate judges supervising the means and processes by which their future colleagues. How is this committee different than Hillary Clinton's health care committee? Well, Your Honor, they're, they're, they're, they're. First lady, Hillary Clinton's health care committee. Well, one of the ways they're the same is they're both not advisory committees, but in, in this particular instance, they were formed for very different purposes and are structured very differently. This particular committee was formed at the prompting of the, of the Senate of Defendants, and the complaint in paragraph 9, frankly, alleges as much that it was established by the Senate of Defendants and, and Mr. Parski. The, the committee that Your Honor refers to, as I understand it, was formed for different purposes by the President himself to aid him in the consideration of an important public policy issue, namely reform of the nation's health care laws. On, with regard to this particular appeal. Some folks that think the appointment of United States attorneys and federal judges is just about as important as public policy gets. I would certainly agree, Your Honor. I would certainly agree. And with regard to this particular appeal, we think it is properly disposed of by the concession that Mr. Manshard made in his briefs and in opening before this Court today. He stated here and there that he has conceded the existence of a textual commitment to the President and the Senate. He contends, however, that the existence of a constitutional commitment is insufficient and that in order to find a political question in this case, this Court, in addition to finding a constitutional commitment, would also have to find that the application of FACA to the facts of this case violated the Constitution. He cites no case in which any court has adopted or even suggested that approach. And rather, the test for establishing a political question has been repeated hundreds of times since it was first articulated by the Supreme Court over 40 years ago in Baker v. Carr. Do we address our sound of all questions to you or your co-counsel? You are certainly free to address to both of us, since it kind of goes to the second half. What's your preference? My preference, I think, would be to let my colleague speak to it. That's fine. Even in the absence of Mr. Manshard's concession, the existence of a constitutional commitment is readily apparent in this case. The appointments and rules of proceedings clauses of the Constitution do commit to the Senate alone the means and processes by which it discharges its constitutional duty to provide advice and consent. The trial court thus correctly held that the procedure whereby senators formulate their recommendations and advise the President is textually committed. And we believe that the Court should affirm the judgment below on that ground. Alternatively, Your Honor, the speech or debate clause of the Constitution also requires affirmance of the dismissal against the Senator defendants. Mr. Manshard's initial and reply briefs do not contest the application of legislative immunity to the Senator defendants. This suit is barred by the speech or debate clause because it seeks to question senators concerning a matter that falls within what the Supreme Court and this Court has described as the legitimate legislative sphere, namely their provision of advice and consent. And because the provision of advice and consent falls within the legitimate legislative sphere, the Senator defendants are absolutely immune from suit. Finally, Your Honor, the dismissal against the Senator defendants should be affirmed because Mr. Manshard lacks Article III standing to bring this suit. Mr. Manshard cannot establish injury in fact because the complaint does not allege that he specifically requested and was denied compliance with FACA's requirements. Mr. Manshard's only response that the Supreme Court and public citizen found standing in that case fails to recognize that in that case the plaintiff requested and was denied compliance with FACA's requirements and thus was injured within the meaning of the statute as the Supreme Court explained. In addition, Mr. Manshard cannot establish the second and third requirements of Article III standing, namely that his alleged FACA injuries are traceable to or addressable by the Senator defendants, members of the legislative branch of government. The legislative branch, like the judicial branch, is expressly excluded from FACA's coverage. FACA imposes no duties upon members of the Senate. Mr. Manshard's only response, again, that the Supreme Court and public citizen found standing in that case does fail to recognize that the only named defendant in that case was the Department of Justice, an entity within the executive branch of government. Entities and officials in the executive branch of government, unlike the legislative branch, are subject to FACA's requirements. Mr. Manshard's alleged FACA injuries, therefore, are not traceable to or addressable by the Senator defendants. Unless Your Honor has any questions with regard to that or anything else. I see none. Thank you for your argument. We'll hear from you. Thank you, Your Honor. Good morning, Your Honor. Joe Klappich for the committee and for Mr. Parsky. I can tell that you're interested in the private right of action argument, and I'll start there. That's sort of the key to the courthouse door, isn't it? I think that's a good place to start, as any. I would agree with Your Honor that Alexander v. Sandoval is a significant case. It makes this particular issue very simple. Did Congress intend to create a private right of action when it passed the statute? And under Alexander v. Sandoval, we determined that by looking at whether the statute displays an intent to create not just a private right, but also a private remedy. And we would submit, as we argued in our brief, that this statute does not have any clear provision for private remedy. And this is essentially the same argument that the district court, Judge Sullivan, in Judicial Watch addressed. And after going through Alexander and saying, boy, Alexander really changes this sort of thing, the courts have for a long time, including a public citizen, assumed that a private right of action exists. But we have to go by the latest case on private right of action, and that's Alexander. And the district court there looked at it and said, you know, there's no private right of action under FACA. Now, opposing counsel has mentioned Cheney and suggested that that case stands for the proposition that there is a private right of action. Actually, I believe what he said was that it assumes that there was. I believe the issue in Cheney was it involved claims under the APA against the executive officials to enforce FACA, which we don't dispute. What we're talking about here, there is no APA claim in this case. And there was also a claim, I believe, under the Mandamus statute with respect to Vice President Cheney. And again, there's no similar claims in this action. And that's why we believe that applying the judicial watch analysis and applying the test that was set forth in Alexander v. Sandoval, that the court should find there's no private right of action under FACA. And if we were to determine that, then that's the end of the case? Yes, Your Honor. I believe it would be, it would be, the dismissal with prejudice, I believe, should be should be affirmed, obviously on an alternative ground than what the district court had gone off on. Is there anything else we would have to consider, such as whether any constitutional claims were asserted? If what you're getting at is do you need to resolve the standing issues and the political question issues prior. Say there's no private right of action under FACA, then suppose there is some constitutional right that the plaintiff has to seek some redress or have this committee act the way he wants it to commit. Has he asserted any constitutional right for that to occur? He has argued a separation of powers claim, but that has been abandoned on the appeal. And as the complaint currently stands, there is no claim other than the statutory claim under the Federal Advisory Committee Act. Well, we can ask your opponent about that. Okay. Obviously, as we've argued, there are additional reasons why the district court should be affirmed. The most clear of those is public citizen itself, which sets forth three factors for determining whether a committee is an advisory committee within that provision. And we would submit that this committee does not satisfy, at least based on the allegations record, it does not satisfy those factors, which are strict management and control, receipt of public funds, and third, whether the executive branch itself considers the committee to be an advisory committee. And not only does the complaint not allege any of those factors, not only are none of those factors addressed in the brief by appellant, but also he's alleged the entire theory of the complaint is fundamentally inconsistent with one of those key factors, which is strict management and control. The crux of this complaint is that the senators and Mr. Parsky, by jointly developing, establishing this committee, what they have done is they have usurped the power of the president. They have taken control of this process away from the president. And for example, paragraph 20 of the complaint says defendants are depriving the president of any input or information on the process. It is inconsistent then to, those allegations are inconsistent with any way of arguing that the president then has strict management and control over the committee. He can't have been, can't have had control taken away from him and then also retained it somehow. Furthermore, there's obviously no allegation the committee receives any public funds, no allegation that the executive branch views the committee as an advisory committee. And sort of in response to that, he's attempted to switch in his brief to arguing that this committee was not utilized by the president, but really was established by the president. The committee is actually more than advisory, isn't it? I'm not sure I understand the nature of your question. Is there any way under this setup for an individual to become a United States district judge in any of the four districts in California without going through this committee? Oh, absolutely, Your Honor. And I don't believe Manshard disputes that. The president retains the power to nominate whomever he chooses. And I believe Manshard has conceded that in his brief. And so the president could practically, since this committee was set up in what, March of, I believe it's 2001. Has anyone advanced to the district court bench in California without going through this committee? I do not believe that anyone has been, he is correct. As I understand, there have been 15 appointments to the bench, all 15 have gone through the process. To sort of get back to where I left off, with respect to the established claim, it's obviously contrary to the allegations in the complaint, but even more fundamentally, the Ninth Circuit in the Alcoa case reasoned that utilized is really a form of established and applied the same three public citizen factors. So this claim fails, fatally fails, under either the utilized prong or the established prong, because under either prongs, you have to show strict management and control. That's not only lacking here, but it's affirmatively alleged to the contrary. And if there are any questions about how to interpret this statute, the Supreme Court has given us, if you will, sort of put its thumb on the scale in one direction. And that was with, in the majority opinion, applying the doctrine of constitutional avoidance. Clearly, I mean, you have to sort of step back here a minute and think about what this case involves. This case involves a process that is set up by which the president receives input from two senators and others about potential judicial appointments. And that raises very serious constitutional concerns. I would argue even more serious constitutional concerns than in public citizen itself, where what you had there was the ABA committee providing advice to the Department of Justice, that I think if you get to this issue, which we would submit you don't need to, is really, I mean, the court and public system made very clear this statute must be construed narrowly in precisely this context when you're dealing with advice given to judges. And then finally, I'll just raise the point. Advice given to presidents. I'm sorry, did I say judges? I was confused of my advice that I'm giving to you. The advice given to the president. And then our last argument was just that sort of apart from everything else, the committee, that its chairman, Mr. Parsky, and the two senators are not proper parties in a lawsuit under the Federal Advisory Committee Act. Basically, the purpose of this act is to regulate the government's use of advisory committees, not the committees themselves. And we know that from, A, the case law that said that. I would refer you to the Center for Auto Safety, the D.C. Circuit case we've cited in our brief. And then you can also see that from the structure of the act itself, you have a number of very important functions under the act that are vested in not the committee, but in government officials. And I'll give you an example. Section 8B requires the agency official to maintain or to, quote, assemble and maintain the reports, records, and other papers of any committee. And so if you wanted to get access to these reports under the act, the person you would go to would be the agency official, not the committee itself. And unless your honors have any further questions. I don't see any. Thank you very much for your argument. We'll hear a rebuttal at this time. Counsel? Yeah, just a couple of things. On the issue of whether or not there is a private right of action. If the court were to, and I do think that there is support in Cheney for a private right of action, but if the court were to hold that there were no private right of action, there'd be no real, there'd be no real way to effectuate the policies of Congress as laid down in FACA. That is, there'd be nobody to come and sue. Unlike the situation in Sandoval, where you had Title VI of the Civil Rights Act, where the government certainly can enforce the rights in that statute. Here there'd be no, there'd be nothing, there'd be no one to do it. And it's not completely unknown for the court to create a private right of action in order to effectuate such policies. One that comes to mind for me immediately right now is the Supreme Court's case in Bivens versus six unknown agents of the FBI. And in that case, Congress, you know, they noted that section 1983 does not apply to the federal government. But at the same time that there are certain rights in 1983, that is, if state governments aren't allowed to deprive people of their federally protected rights, neither ought the federal government be allowed to do so as well. So the fact is that here when we have the parties basically conspiring to violate the Federal Advisory Committee Act, there has to be some way of enforcement. And I think the court would be, if Cheney wasn't enough for the recognition of a private right of action, the court would be entitled to imply one. Just very briefly on the issue of standing, I was a participant in the process for United States attorneys. So to say that I don't have standing, I mean, if I don't have standing, who does? As a participant in the process, I'm not an uninterested third party or someone who came or seeking to employ taxpayer standing. Defendants also cite the Alcoa case for the proposition that there was no advisory committee, that it wasn't utilized by the president. And the first thing, as to the issue of whether or not my theory is incohesive or conflicts with, is inconsistent with itself, I think the first thing is, look, if I'm saying that the committee was established by the president, then I ought to be allowed simply an opportunity to amend the complaint to make that clear. I'm not saying that it's inconsistent. Yes, the committee was set up by, at least in part, by persons other than the president. But they say the president doesn't have strict management or control. Well, I mean, he's the president of the United States. I don't know that he has strict management or control of anything. Basically, he delegates his duties, and that's what I believe he did here. To the extent that they want to say that it's inconsistent, I would just simply say that that would be something that would be easily fixed by the pleading. And the court, in that case, if that were the case, then the court should have allowed me an opportunity to amend, and that could still be done. What about, you made an argument about separation of powers in some way obligating this committee to do what you wanted to do. You did that in the district court, did you? Yes, it was a theory advance in the district court. And it was actually one that I got from Professor Charles Freed at Harvard Law School. I didn't see that advance to our court. I did not advance it to this court. But that's where it came from. I'm sure there must be a law review article on it somewhere. Thank you. Thank both counsel, all counsel for their arguments. The case just argued will be submitted for decision. We'll proceed to the last case on the calendar this morning. And indeed, for the week, Lucille Abbott at all versus the Commissioner of Internal Revenue. Counsel will come forward, please. Mr. Stitch, there's a very fine trial judge in there.
judges: Noonan, Thompson, Hawkins